## L. H. CARHART v. G. A. BROWN.
### No. 79.

**1. Partnership.**

See contract held to constitute the parties a firm, a partnership ........ 427

**2. Contract of Partnership—Construction.**

The contract out of which litigation arose distinctly expressed that a partnership of three persons was formed, the members to share losses and gains in a ranch enterprise. The clause, "in stocking said range no member shall, except by consent, put thereon exceeding one-third the capacity thereof, as may be determined by the firm," did not inject into the contract the obligation of the firm to care for such stock put in the pasture by individual members of the firm, at the expense of the firm ....................................................... .... 429

ERROR to Court of Civil Appeals for Second District, in an appeal from Donley County.

Justice STEPHENS dissented from the judgment in Court of Civil Appeals.

*J. N. Browning,* for plaintiff in error.—1. The substance of the contract between the parties is found in the first conclusion of fact found by the Court of Civil Appeals. [See opinion.] It is clear of ambiguity, unless the last clause is ambiguous. To give that clause the meaning given by a majority of the Court of Civil Appeals would conflict with the clause which declares that "each of said partners shall share equally and alike all costs and expenses incident to said firm business and in all profits and losses accruing therefrom." Oral evidence can not be allowed to give a meaning to a doubtful part, inconsistent with that which is clear. 1 Greenl. on Ev., sec. 282. For a definition of "incident," see Black's Law Dictionary, 610. Written contracts capable of a fair and reasonable construction by the courts are not to be warped into some other meaning by oral testimony. Wooters v. Railway, 54 Texas, 294; Bruner v. Strong, 61 Texas, 555; Belcher v. Mulhall, 57 Texas, 17; Self v. King, 28 Texas, 552; 1 Greenl. on Ev., sec. 275.

2. The court erred in holding that the plaintiff in error was liable for one-third of the expenses of the individual cattle of the defendant in error by him placed upon the partnership ranch. Black's Law Dic., 610; Withers v. Withers, 8 Pet., 355; Meyer v. Callaghan, 24 Fed. Rep., 636; Brown v. Haynes, 6 Jones' N. C. Eq., 49; 2 Lind. on Part., p. 418, side p. 970.

*Walton, Hill & Walton,* for defendant in error. — It is unquestionable that Carhart, McClelland, and Brown entered into a partnership for mutual profit; that is to say, each owned more or less stock, but had no place in which to securely restrain or pasture them. They also needed

fine bred bulls to grade up their stock, and horses for driving, herding, and gathering escaped stock and riding the fence lines, etc. The pasture was to be common property in defined interests, and each was allowed pasturage to the extent of his respective interest. The partnership did not continue long, McClelland selling his interest to Brown. Then the new partnership between Carhart and Brown commenced, if we can believe the testimony of Brown, and can fairly read the acts, expressions, and conduct of Carhart on that subject.

Brown availed himself of his privilege of pasturing, but Carhart did not to the full extent of his right. He did for a time pasture 100 head, but voluntarily caused them to be removed. He did extend to Allen the right to pasture 125 head. He did constantly claim the right to stock the pasture to the capacity of his interest. He did claim an interest in the hay crops.

The pasture had to be put in condition for occupancy; some improvements were necessary—fences, wells, and wind mills. The premises had to be kept in repair, or else the premises would have run into worthless ruin. To keep them in repair, expenses had to be incurred; hands employed and paid, provisions for men, and feed for horses and bulls to be provided. All cost money. It is true that Brown in fact received the greater benefit, certainly so, but that was because, and only because, he owned two-thirds and largely availed himself of his rights. The one-third capacity of the ranch awaited at all times to be taken advantage of by Carhart. Mr. Carhart appears to have been quite a wanderer, and to have many irons in the fire. Much absence and many irons do not, as a rule, work to sure profit. Some of the irons will burn.

The account sued on by plaintiff was for over $10,000; the court cut it down to something over $5000; and we may rest assured that in so cutting it down the court exercised caution and sound discretion, having as he did the whole account of expenditures analyzed from the mouths of witnesses whom he saw, heard, and whose truthfulness and credibility he carefully and accurately weighed. His conclusions are probably correct; at least as nearly so as we, who are so far away, can draw.

The arrangement between the parties was not illogical nor unreasonable; on the contrary, they had in them all the elements of economy and safety. If Mr. Carhart had put in his stock, he would in all probability have realized good profit instead of meeting with a loss. The object of the arrangement was to accomplish what neither could do alone, viz., procure land, improve, support, and run a pasture; and yet Mr. Carhart seeks to compel Brown to do what he declared he was unable to do, viz., equip and maintain the pasture; and that too when he was only allowed to use two-thirds of the pasture capacity, thus absolutely throwing away the other one-third of the pasture capacity. To have done this would have been worse than blind stultification.

GAINES, ASSOCIATE JUSTICE.—The defendant in error brought this suit against the plaintiff in error to recover one-third of the expenses of managing and maintaining a cattle ranch. The plaintiff below claimed that the expenditures were made by him in pursuance of a contract of partnership entered into between him and the defendant. The case was tried without a jury, and judgment was given for the plaintiff. This judgment was affirmed by the Court of Civil Appeals.

In the findings filed by the trial judge, and adopted by the Court of Civil Appeals, the following facts appear: On the 1st day of June, 1883, the plaintiff, the defendant, and one T. S. McClelland executed articles of partnership, as follows:

"*The State of Texas, Donley County.*—Know all men by these presents, that L. H. Carhart, T. S. McClelland, and G. A. Brown, all of Donley County, Texas, have this day entered into a copartnership for the purpose of procuring, fencing, stocking, and operating a stock ranch in Donley County, Texas, and embracing the following territory. [Here follows the description, which is omitted.] The style of said firm shall be Brown, McClelland & Carhart, and each of said partners shall share equally and alike all costs and expenses incident to said firm business, and in all profits and losses accruing therefrom; but neither partner shall have the power to sell the interest of his copartner in said firm business without the written consent of said copartner; and should any member of the firm determine to dispose of or sell his interest in said business, the remaining partners shall have the prior right to purchase, at the price and on the same terms which might otherwise be obtained.

"All lands leased, owned, or otherwise held, or which may hereafter be procured by either member of the firm in said range, shall be transferred to the copartnership; and all annual rentals accruing thereafter on the leased lands shall be paid by the firm, and any excess of lands deeded to the firm by any member thereof shall be accounted for and reimbursements made on the basis of the costs thereof to the individual member.

"All questions pertaining to said firm business shall be determined by a majority of the members, except for the purchase of partnership stock for said ranch, which shall require the consent of all of said partners. In stocking said ranch, no one member shall, except by consent, put thereon exceeding one-third the capacity thereof, as may be determined by the firm."

In March, 1885, the plaintiff, Brown, bought the interest of McClelland in the partnership property, and soon after that purchase, as the trial court found upon conflicting testimony, plaintiff and defendant agreed to continue the partnership on the original terms—the plaintiff owning a two-thirds interest and the defendant one-third. The partnership so formed was dissolved by mutual consent on the 1st day of July,

1888. During the existence of the partnership the plaintiff paid out, as expenses of operating and improving the ranch and in caring for the livestock thereon, the sum of $5750. The firm had eighteen bulls and five saddle horses in the pasture. The plaintiff kept upon the ranch during the continuance of the partnership cattle varying in number from 800 to 1200 head, which belonged to him individually. The defendant had no individual stock in the pasture, except about 100 heifers, in the year 1885. The plaintiffs at no time had stock upon the land in excess of two-thirds of the capacity of the pasture.

It also appeared in evidence as an undisputed fact, that shortly after the original partnership was formed thirty bulls and some saddle horses were bought for the firm and placed in the pasture, but that no other cattle were ever placed in the pasture on the firm account at any time during the existence of either partnership.

The court found as a matter of law, that " the firm of Brown & Carhart was liable for all reasonable expenses incurred in looking after, caring for, and protecting partnership property of said firm, and the individual stock of the members of said firm placed in said pasture, not to exceed their respective interests in the capacity of said pasture;" and gave judgment accordingly. It is therefore apparent that the plaintiff has recovered in part for the expense incident to the care and management of his own cattle.

It is evident that the judgment can not stand except upon the theory that in the event the pasture was not stocked by the firm to its full capacity, each partner had the right under the terms of the contract not only to put into it his individual cattle to a limited number, but also to have them cared for and maintained at the expense of the firm.

That the parties might have made such a contract, we see no reason to doubt; and if such had been their intention as expressed in the writing, the defendant, who failed to avail himself of the benefits secured to him by the agreement, could not legally object to paying his proportionate part of the expenses incurred in the enterprise, upon the ground that the plaintiff alone had enjoyed its advantages. But in our opinion the contract in question is not fairly susceptible of the construction which is claimed for it on behalf of the plaintiff. That construction is doubtless based upon the provision which reads: "In stocking said range, no member shall, except by consent, put thereon exceeding one-third the capacity thereof, as may be determined by the firm."

But " the intention of the parties will be determined from the effect of the whole contract, regardless of special expressions." 1 Bates on Part., sec. 17.

This rule is peculiarly applicable to the articles under consideration. It is not only expressly stipulated that the parties enter into a parnership, but the leading provisions in the contract necessarily make it a partner-

ship. The parties agreed to procure, fence, stock, and operate a stock ranch; and they provide, that "each of said partners shall share equally and alike all costs and expenses incident to said firm business, and in all profits and losses accruing therefrom." These stipulations indicate that the sole purpose of the contract was to create a partnership in its simplest form; and there is no other provision which shows that such was not the paramount object.

It is clear that it was intended to form not merely a partnership in name, but also a partnership in fact and in law; that it was the purpose jointly to provide and maintain a pasture upon which cattle belonging to each of the parties individually should be kept and cared for at the common expense, and for the separate profit of the owner, is not only inconsistent with the idea of a legal partnership, but is also repugnant to the express provision in the articles, that they should share equally "in all the costs and expenses in said firm business, and in all profits and losses accruing therefrom."

The declared object of the association was not only to procure and fence the pasture, but also "to stock and operate it;" and it is clearly implied that it was to be stocked with partnership cattle, and operated for the profit of the firm.

That it was contemplated that for a time at least the pasture might not be stocked to its full capacity with partnership cattle, and that each partner should be entitled to place and keep upon it a limited number of his individual livestock, is not to be denied; but it does not follow that the expense of caring for them was to be borne by the firm. The articles provide that the partners are to bear equally the expense of the partnership business.

But it can not be held that the rearing and maintaining of individual cattle upon the ranch was a part of the business of the firm. If partnership business, then each partner would have been entitled to participate in the profits arising from it. This would seem not only a necessary consequence, but it would also secure a more equitable result than that which would flow from a construction which would enable one member to take to himself the profits of a part of the business which had been carried on at the expense of the firm. And yet neither party appears ever to have claimed the right to participate in the profits accruing from the individual cattle of the other.

The condition which led to the insertion in the articles of partnership of the particular claim in question is not difficult to discover. The parties to the original agreement evidently foresaw that, at the outset at least, the firm might be unable to stock the ranch to its full capacity, and that the surplus might be utilized by the members on their individual account. It was therefore intended that the surplus capacity not appropriated by the firm should be used for pasturing the individual cattle of

the members.   The immediate purpose of the provision was not so much
to declare this right, which seems to have been tacitly recognized, as to
limit its exercise to the capacity of the ranch, and to secure to each an
equal participation in the privilege.   This affords a simple solution of
the question.

Without this clause, the contract is barren of a word or phrase that
tends to show that any right to pasture individual cattle was to be exer-
cised.   The provision does not expressly affirm that any such right
should exist.   It simply places a limitation upon its exercise, and thereby
its existence is merely implied; and we are of opinion that the implica-
tion goes no farther than to recognize the privilege of each member of
the firm to use the ranch for pasturing his own cattle, free of charge for
such use, but otherwise at his own expense.

We are of opinion that the judgment of the court below is based upon
an erroneous construction of the terms of the partnership, and is there-
fore erroneous.

The judgments of the Court of Civil Appeals and of the District Court
are accordingly reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 22, 1894.

Associate Justice BROWN not sitting.